John R. Gerstein (admitted *pro hac vice*)
1775 Pennsylvania Avenue, NW, 4th Floor
Washington, DC 20006
Justin S. Levy (Texas Bar Number 24078852)
10440 N. Central Expressway, Suite 800
Dallas, Texas 75231
CLYDE & CO US LLP
jack.gerstein@clydeco.us
justin.levy@clydeco.us

Vincent P. Slusher (Texas Bar Number 00785480)
Kristen L. Perry (Texas Bar Number 24090015)
FAEGRE DRINKER BIDDLE & REATH LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201
vince.slusher@faegredrinker.com
kristen.perry@faegredrinker.com

COUNSEL FOR AXIS INSURANCE COMPANY

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **CHAPTER 11** |
| | § | |
| **THINK FINANCE, LLC** | § | **CASE NO. 17-33964-HDH-11** |
| | § | **(Jointly Administered)** |
| *Debtor.* | § | |
| | § | |
| **KENNETH REES AND** | § | |
| **THINK FINANCIAL ASSETS, LLC** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 20-03065-hdh** |
| | § | |
| **AXIS INSURANCE COMPANY,** | § | |
| | § | |
| *Defendant.* | § | **Hearing Date: June 29, 2020** |

---

## JOINT DISCOVERY PLAN

---

Pursuant to Rule 7026 of the Federal Rules of Bankruptcy Procedure and Rule 26 of the Federal Rules of Civil Procedure, Plaintiff Kenneth Rees ("Rees"), Think Financial Assets, LLC ("TFA") (collectively, "Plaintiffs"), and Defendant AXIS Insurance Company ("AXIS") (collectively, the "Parties") submit this Joint Discovery Plan.[1]  As explained in Paragraphs 23-25 below, the Parties will request a scheduling conference regarding the length of the period for fact discovery because they have reached an impasse.

1.  <u>Jurisdiction and Service.</u>  All Parties to this action have been served.  In its Answer, Affirmative Defenses, and Jury Demand (Doc. No. 26), AXIS did not consent to the Bankruptcy Court's entry of final orders and judgment, and AXIS demanded a trial by jury.  On August 18, 2020, Chief District Judge Lynn granted AXIS's Unopposed Motion to Withdraw the Reference to the Bankruptcy Court (Doc. No. 29), referring all pretrial matters to this Bankruptcy Court.

2.  <u>Brief Statement of Facts.</u>  Think Finance, LLC (formerly known as Think Finance, Inc.; hereinafter Think Finance, LLC and Think Finance, Inc. are collectively referred to as "Think") and its related entities (collectively, the "Debtors") filed Chapter 11 petitions on October 23, 2017.  [*See* Voluntary Pet., Doc. No. 1, No. 17-33964-hdh11].  The Chapter 11 cases were procedurally consolidated and jointly administered under lead case no. 17-33964-hdh11.

---

[1]  Except for Paragraphs 24 and 25, the Parties agree to the language in this Joint Discovery Plan.  Plaintiffs wrote Paragraph 24, and AXIS did not make any revisions. AXIS wrote Paragraph 25, and Plaintiffs did not make any revisions.  To expedite the drafting process, AXIS wrote its position statement before reviewing Plaintiffs' position statement, and AXIS did not make any further, substantive revisions after reviewing Plaintiffs' position statement.

3.     Rees was the CEO of Think until May 1, 2014.  TFA is the assignee of Think's insurance rights.

4.     AXIS issued Excess Policy no. MSN773596/51/2013 to Policyholder Think Finance, Inc. for the Policy Period of December 15, 2013 to December 15, 2014 (the "Policy").[2]  The Policy is scheduled over Illinois National Insurance Company ("Illinois National") Directors, Officers and Privacy Company Liability Insurance Policy no. 01-739-31-54 (the "Followed Policy").  Except as specifically set forth in the Policy, coverage under the Policy applies in conformance with all provisions of the Followed Policy.  AXIS contends this is the involved excess policy.  The Complaint in this case, however, identifies at paragraph 8 a different AXIS policy no. (MSN 773596/01/2013), which is the same policy no. referenced in AXIS's September 13, 2016 letter attached as Exhibit E to the Complaint.  Plaintiffs allege that Exhibit A to the Complaint is a copy of the relevant AXIS policy.  That exhibit consists of the form for a third AXIS policy no. (MLN773596/01/2013), Endorsement No. 1 to that policy number, and Endorsement No. 7 to AXIS policy no. MSN773596/51/2013.  The parties expect to work cooperatively in identifying the correctly applicable AXIS excess policy.

5.     At issue, is coverage under the Policy for ten underlying lawsuits (the "Underlying Lawsuits") alleging that Think, Rees, and others engaged in a so-called "rent-a-tribe" scheme, in which actual operational control of the involved Native American lenders was not exercised by the tribal entities, but by Think, such that Think allegedly acted as the "true lender" and rendered the Native American lenders' application of tribal law a sham.

---

[2] AXIS intends to file an amended answer to clarify that the Complaint references an incorrect policy number for the Policy and that Exhibit A to the Complaint is not a complete copy of the Policy.

6.    On August 26, 2019, this Bankruptcy Court approved a settlement in which Illinois National agreed to pay the remaining limit of liability of the Followed Policy because of the Underlying Lawsuits.

7.    In this adversary proceeding, Rees and TFA assert claims against AXIS for breach of contract, declaratory judgment, and bad faith.  AXIS denies that there is coverage under the Policy (or the Followed Policy) for the Underlying Lawsuits and that it is liable for bad faith.

8.    <u>Brief Statement of Legal Issues.</u>  The primary legal issues that are disputed by the Parties are:

• Whether liability attached to AXIS under the Policy because of the settlement involving the Followed Policy – the Insuring Agreement for the Policy states that "Liability shall attach to the Insurer only after (i) the insurers of the Underlying Insurance, the Insureds or others on behalf of the Insureds shall have paid in legal currency amounts covered under the respective Underlying Insurance equal to the full amount of the Underlying Limit…."

• Whether the Followed Policy's exclusions preclude coverage for Loss in connection with the Underlying Lawsuits – in pertinent part, Endorsement No. 15 is a Professional Errors & Omissions Exclusion (With Securities Claim Carve-Out) that provides: "the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s) alleging, arising out of, based upon or attributable to any Insured(s)' performance of or failure to perform professional services for others for a fee, or any act(s), error(s) or omission(s) relating thereto."

- Whether the Followed Policy's Run-Off Endorsement limits coverage for Loss in connection with the Underlying Lawsuits – in pertinent part, that endorsement provides: "It is further understood and agreed that notwithstanding any other provision of this policy, this policy shall not provide coverage for any Claim(s) alleging any Wrongful Act(s) occurring after the Effective Time [(May 1, 2014)]."

- Whether defendant excess insurer's involved denials of coverage expose it to extra-contractual damages, for bad faith insurance practices under the common and statutory law of Texas, including Chapters 541 and 542 of the Texas Insurance Code, because of alleged distortions of facts, law and applicable policy terms, demonstrating an intent to limit and deny coverage despite the lack of a reasonable basis to do so.

9.      The above summary is without prejudice to or waiver of any additional allegations, defenses, or arguments by the Parties.

10.      <u>Discovery Plan.</u>   The Parties have agreed to exchange the initial disclosures required by Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure within twenty (20) days following the entry of an amended scheduling order.

11.      The Parties have agreed to the disclosure of expert testimony under Rule 26(a)(2) of the Federal Rules of Civil Procedure as follows: (a) Plaintiffs shall make their respective disclosures, if any, within forty-five (45) days of the expiration of the deadline for factual discovery; (b) to the extent that AXIS's expert, if any, is not providing responsive testimony only, AXIS shall make that disclosure within sixty (60) days of the expiration of the deadline for factual discovery; (c) to the extent that AXIS's expert, if any, is providing responsive testimony, AXIS shall make that disclosure within forty-five (45) days after service of Plaintiffs' respective disclosures; and (d) to the extent that

Plaintiffs' expert, if any, is providing responsive testimony only, Plaintiffs shall make that disclosure within thirty (30) days after service of AXIS's disclosure.

12. The Parties have agreed to exchange pretrial disclosures at least forty-five (45) days prior to the docket call. In accordance with Rule 26(a)(1)(3), the Parties have agreed to exchange objections within fourteen (14) days after such disclosures are made.

13. In general, Plaintiffs intend to seek the following categories of documents and information from AXIS: (a) the claim file for the Underlying Lawsuits; (b) any separate coverage file for the Underlying Lawsuits; (c) the underwriting file for the Underlying Lawsuits; and (d) AXIS's handling of claims during the past five years for policies similar to the Policy and the Followed Policy issued to Texas insureds and in which AXIS denied coverage or reserved its rights on attachment or professional services exclusion provisions.

14. In general, AXIS intends to seek the following categories of documents and information from Plaintiffs: (a) filings in the Underlying Lawsuits; (b) discovery from the Underlying Lawsuits, including written discovery, depositions, and document productions; (c) the Debtors' records, including invoices and financial statements, relating to the services provided to the Native American lenders; (d) the Debtors' records relating to the loans and lines of credit at issue in the Underlying Lawsuits, focusing on the dates when those loans and lines of credit were issued and administered; (e) agreements and correspondence regarding settlement in the Underlying Lawsuits, including correspondence exchanged with the plaintiffs in the Underlying Lawsuits; (f) correspondence between Rees and the Debtors regarding indemnification for Rees in the

Underlying Lawsuits; and (g) correspondence with AXIS and Illinois National Insurance Company regarding insurance coverage for the Underlying Lawsuits

15.    By identifying these general categories of anticipated discovery in this Joint Status Report, the Parties do not waive their rights to respond and/or object appropriately or to seek further discovery.

16.    The Parties have agreed to produce electronically stored information to the extent it was preserved in the ordinary course of business or was produced in the Underlying Lawsuits, as applicable.

17.    On August 5, 2020, AXIS provided a copy of production specifications for the digital format of Plaintiffs' electronic records production and the data fields to be provided by Plaintiffs.  Plaintiffs' initial voluntary production, described below, was sent to AXIS in a format consistent with those specifications.

18.    The Parties have agreed to exchange categorical, rather than document-by-document, privilege logs.  For each category, the Parties will provide the basis for withholding, the general subject matter, the date range, and the authors, senders, and recipients.  The Parties have agreed that they are not required to log any documents or communications created on or after the date Plaintiffs filed the Complaint in this adversary proceeding.

19.    The Parties have agreed to the terms of a proposed clawback order under Rule 502 of the Federal Rules of Evidence.  It is attached as Exhibit A.

20.    The Parties have agreed to the terms of a proposed protective order under Rule 26(c) of the Federal Rules of Civil Procedure.  It is attached as Exhibit B.

21.     At this time, the Parties have not identified a need to alter the discovery limitations imposed under the Federal and Local Rules.  The Parties do not waive their rights to seek subsequent modifications of these limitations.

22.     Schedule. In addition to the disclosure deadlines set forth in Paragraphs 10-12 above, the Parties have also agreed to the following deadlines: (a) amended pleadings can be filed without leave of court within thirty (30) days following the entry of a scheduling order; (b) dispositive motions shall be filed no later than ninety (90) days following the deadline for fact discovery; (c) motions in limine shall be filed no later than thirty (30) days prior to the docket call; (d) trial briefs and proposed jury charges shall be filed no later than ten (10) days prior to the docket call; and (e) trial shall be scheduled consistent with the Court's and the parties' availability following six (6) months from the date of the deadline for fact discovery.

23.     The Parties have been unable to agree to a deadline for fact discovery and will request a status conference to resolve this issue.  The Parties intend to submit a scheduling order once the impasse is resolved.  Set forth below are the parties' positions as to scheduling issues to be resolved by this Court at a Status Conference.

24.     Plaintiffs' Position.  Plaintiffs believe that this Court should order a discovery deadline of four months following the entry of a scheduling order based on the following:

(a)     Defendant excess insurer grossly overstates its realistic needs for discovery in this case in challenging the claim that the denials of coverage it has already made, based solely on materials then available to it, are contrary to its coverage responsibilities under the terms of the Policy and the Followed Policy..

The dominant issues in this case are purely legal questions regarding the construction of the insurance policy terms. This includes the question of whether the Policy's exhaustion provision applies to the payments made by the primary insurer which this Court's August 26, 2019 order provided would, "exhaust its [i.e., the primary insurer's] policy limits."

The other dominant issue in this case is whether the exclusions relied upon by AXIS apply to the allegations of the underlying complaints and AXIS' obligation for over $25 million of defense costs incurred in connection with those underlying actions. This is an issue which, under Texas law, must be determined within the "eight corners" of the underlying complaints and the Policy. Under Texas law, "[a]n insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy." National Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997). Given that the Policy has only $5 million in limits, the defense costs in excess of $25 million, if deemed covered based on the allegations of the complaints, would be sufficient to exhaust the limits of the Policy several times over.

Not only are these policy interpretation disputes legal issues as a matter of law, but, as demonstrated by the exchanges between coverage counsel for the parties in this case (at Exhibits F, G and H to the Complaint), consisting of dozens of pages of legal analysis and arguments, the parties in this case have already extensively debated the legal issues at issue. In connection with those communications, AXIS never suggested that it needed additional documentation or information to justify its denials of coverage, let alone that it needed every page of every document ever filed or produced in the underlying cases as it now apparently asserts.

The issues in this case of indemnity coverage/damages for underlying settlements also involve predominantly legal questions of policy interpretations, and only require focused discovery as to the terms and nature of such underlying settlements.

(b)      AXIS ignores and denigrates the enormously informative nature of the voluntary production already provided by Plaintiffs by describing it as "primarily consists[ing] of publicly available versions of filings of the underlying lawsuits."

For example, plaintiffs' voluntary production was not "unsolicited" as AXIS alleges, but a response to AXIS' counsel's suggestion that, in light of the challenges presented by protective orders in the underlying actions, Plaintiffs' attempt to collect and voluntarily produce, as soon as possible, what they could from the underlying actions without running afoul of the rights of third parties under the protective orders.

As explained in an August 19, 2020 e-mail to defense counsel, in connection with the first wave of this voluntary production of 25,000 plus pages documents, exhaustive cross-motions for summary judgment were filed in the underlying Pennsylvania lawsuit, which were largely unredacted.  Those documents set forth extraordinary detail as to the underlying claims, and included copies of virtually all of the evidentiary exhibits that the underlying parties deemed significant, including documents from the underlying document productions AXIS now seeks.  As then explained, plaintiffs were able to include this information in the voluntary production "in a manner that eliminates the enormous burden of issues dealing with the confidentiality designations in those productions and transcripts."

This also included hundreds of pages of detailed arguments as to the nature and merit of the underlying claims, and over 3,000 pages of exhibits deemed significant by

the underlying parties.  By way of illustration, the initial voluntary production included not only five volumes of underlying exhibits, but also a 100-page, 293-paragraph statement by the plaintiff attorney general in the underlying Pennsylvania action of allegedly undisputed facts, and extensive subsequent filings made by the parties as to those allegedly undisputed facts.

Further, in the first wave of the initial voluntary production, AXIS was also provided with all other filings in the district courts in the underlying lawsuits in which Rees was a defendant, and all significant filings in the several underlying cases in which only Think and not Rees, was a defendant, with the exception of documents that were filed under seal and not unsealed.

In addition, notwithstanding that excess insurer's present demands for discovery from the underlying lawsuits are so grossly overbroad as to be beyond overkill, Plaintiffs have committed, in writing, to moving to unseal and produce, subject to a protective order in this adversary proceeding, the very limited filings made by them under seal, redacting only confidentiality designations made by third parties, and to cooperate in any effort by AXIS as to information designated confidential by third parties under the underlying protective orders.

Further, Plaintiffs' voluntary production already includes either full copies or portions of 15 deposition transcripts from the underlying actions which the underlying parties relied upon in their hundreds of pages of exhaustive arguments on the above cross-motions in the underlying Pennsylvania action.  In addition, Plaintiffs have since obtained full transcripts of the underlying deposition testimony of the 21 witnesses believed to be the only deponents in the underlying lawsuits, and have committed, in

writing, to produce same to AXIS upon entry of a protective order, redacting only confidentiality designations made by third parties.

Also, in that initial voluntary production Plaintiffs produced all written discovery to and from Rees, and since then Plaintiffs have committed, in writing, to producing all available written discovery to and from Think not involving confidentiality designations of third parties, subject to appropriate protective orders.

As to the underlying document productions of Rees and Think, Rees has agreed, subject to protective order, to produce to AXIS his underlying document production.

As to Think's underlying document production, the over 3,000 pages of exhibits in the PA case already included in the initial voluntary production largely consist of Think's produced documents. Nonetheless, Plaintiffs have, in writing, subject to an appropriate protective order, assented to the production, from Think's underlying litigation database, of its underlying document production, except to the extent it includes materials designated confidential by third parties.

TFA has explained to AXIS that this database, which is maintained by a third-party discovery vendor, was used to produce documents for all of the underlying actions, but it has since between transferred to the Litigation Trust. While AXIS has represented that it was told by the Litigation Trust that the Litigation Trust was not provided with discovery from the underlying actions, Plaintiffs have since provided Defendant with a copy of the Assignment and Assumption Agreement, executed by Think and the Litigation Trust on January 17, 2020, which effected the transfer of the database. Plaintiffs also offered to make a joint request to the Litigation Trust to resolve this issue,

but Defendant has rejected that offer and has not sought to subpoena the documents to date.

Also, prior to this litigation, Plaintiffs provided AXIS all of the then past Rees defense fee invoices at issue, unredacted, and redacted Think invoices. Since then, Plaintiffs have committed, in writing, to the prompt production to AXIS, subject to appropriate protective and privileged-related orders, of all involved underlying invoices unredacted.

(c) As Plaintiffs have repeatedly made clear to AXIS in discussions regarding scheduling and discovery, it is agreed that the scheduling order may provide that litigation deadlines are subject to extension "for good cause shown."

(d) As to Plaintiffs' affirmative discovery, AXIS has agreed to produce their underwriting file and the non-privileged portions of their involved claims and any separate coverage file.

25. <u>AXIS's Position.</u> AXIS believes that fact discovery will require a twelve-month period based on the following:

(a) Discovery in this adversary proceeding is likely to be a laborious process because of a combination of: (1) the number of Underlying Lawsuits; (2) the protective orders, related confidentiality designations, and sealed filings in those Lawsuits; (3) Plaintiffs' failure to preserve discovery from the Underlying Lawsuits; (4) the dissolution of the Debtors; (5) TFA's status as an assignee (it remains unclear whether TFA will contend that any documents or information belonging to the Debtors' is outside of TFA's possession, custody, or control); (6) discovery from third-parties who have no incentive to cooperate; (7) motions practice; and (8) the pandemic.

(b) During the past two months, AXIS attempted to expedite the discovery process by conferring with Plaintiffs regarding Plaintiffs' ability to quickly produce the discovery from the Underlying Lawsuits. AXIS's belief was that this underlying discovery might eliminate any need to otherwise obtain portions of the Debtors' books and records.

(c) After AXIS identified its need for the underlying discovery, Plaintiffs responded with an unsolicited production of more than 25,000 pages. AXIS performed an expedited review of the produced documents, which primarily consist of publicly-available versions of filings from the Underlying Lawsuits. Plaintiffs suggested that the discovery excerpts in those selected filings were a potential substitute for the requested discovery. AXIS informed Plaintiffs that AXIS could not accept this compromise for the actual, complete discovery—AXIS cannot agree, before discovery even begins in earnest, that the excerpted discovery will resolve the potential factual disputes in the adversary proceeding.

(d) Plaintiffs then admitted that they no longer have possession, custody, or control of the documents produced in the Underlying Lawsuits, except for Rees's minimal productions. For the Underlying Lawsuits, Rees and the Debtors apparently relied on a single e-discovery database that hosted all parties' productions. Rees, the Debtors, and TFA did not download copies of the produced documents before losing access to the database.

(e) Because they failed to preserve these documents, AXIS anticipates that Plaintiffs will object to the relevance of or need for the underlying discovery in this adversary proceeding. AXIS would respectfully disagree with that position. Attached as

Exhibit C is a Statement of Position filed by Rees in the one of the Underlying Lawsuits, explaining that his defense depended on discovery from others, including the Debtors. [Ex. C at 3-4].

(f) AXIS also anticipates that there will be disputes in this adversary proceeding relating to obtaining those documents from third parties. For example, Plaintiffs stated that the Think Finance Litigation Trust has copies of the missing discovery (implying that the Reorganized Debtors do not have copies). Therefore, AXIS conferred with counsel for the Think Finance Litigation Trust, who represented that the Trust only has copies of the Debtors' books and records (not any discovery from the Underlying Lawsuits) and has a limited ability to produce any documents. AXIS reported this information back to Plaintiffs, who maintained their belief that the Trust has copies of the missing discovery and encouraged AXIS to serve a subpoena on the Trust.

(g) Whenever the missing discovery is located and obtained, AXIS will then need time to review the documents. The underlying document productions are substantial in volume. The Bates-labeled references in the public filings indicate that the Debtors' productions in one of the Underlying Lawsuits total more than 750,000 pages.

(h) Notwithstanding these issues, the Parties did make some progress in conferring about the discovery plan. Plaintiffs have agreed to produce copies of the deposition transcripts and exhibits from the Underlying Lawsuits once a protective order is entered in this adversary proceeding. There were at least twenty-one depositions in the Underlying Lawsuits. Plaintiffs have stated that they cannot produce testimony or exhibits designated as confidential by parties other than Rees or the Debtors. Plaintiffs are still investigating the extent to which underlying confidentiality designations are

actually an obstacle to producing underlying discovery in this adversary proceeding. Working through these confidentiality issues, could cause further delays.

(i)     Until these deposition transcripts and the missing documents are obtained, it is difficult for AXIS to make a reasonable estimate regarding the number of depositions it will need or when those depositions can be scheduled.

Dated: October 7, 2020                    Submitted by:

                                          /s/ David R. Taubenfeld
                                          David R. Taubenfeld
                                          HAYNES AND BOONE, LLP
                                          2323 Victory Avenue, Suite 700
                                          Dallas, Texas 75219
                                          -and-
                                          Tyler C. Gerking, Esq.
                                          Patrick S. Loi, Esq.
                                          FARELLA BRAUN + MARTELL LLP
                                          235 Montgomery Street, 17th Floor
                                          San Francisco, CA 94104
                                          COUNSEL FOR THINK FINANCIAL
                                          ASSETS, LLC

Dated: October 7, 2020                    Submitted by:

                                          /s/ Jeffrey R. Seckel
                                          Jeffrey R. Seckel
                                          J. Mark Chevallier
                                          MCGUIRE CRADDOCK STROTHER PC
                                          500 N. Akard, Suite 2200
                                          Dallas, Texas 75201
                                          -and-
                                          Jeffrey R. Lerman, Esq.
                                          MONTGOMERY, MCCCRACKEN
                                          WALKER & RHOADS, LLP

1735 Market Street
Philadelphia, PA 19103
COUNSEL FOR KENNETH REES

Dated: October 7, 2020          Submitted by:

/s/ John R. Gerstein
John R. Gerstein (admitted pro hac vice)
CLYDE & CO US LLP
1775 Pennsylvania Avenue, NW, 4th Floor
Washington, DC 2006
Justin S. Levy
CLYDE & CO US LLP
10440 N. Central Expressway, Suite 800
Dallas, Texas 75231
-and-
Vincent P. Slusher
Kristen L. Perry
FAEGRE DRINKER BIDDLE & REATH
LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201
COUNSEL FOR
AXIS INSURANCE COMPANY

# EXHIBIT A

David R. Taubenfeld, Esq.
Texas Bar Number 19679450
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Phone:  (214) 651-5531
Fax:  (214) 200-0686
david.taubenfeld@haynesboone.co

Tyler C. Gerking, Esq.
Patrick S. Loi, Esq.
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Phone:  (415) 954-4400
Fax:  (415) 954-4480
tgerking@fbm.com
ploi@fbm.com
OF COUNSEL FOR THINK FINANCIAL ASSETS, LLC

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **THINK FINANCE, LLC** | § | **CASE NO. 17-33964-HDH-11** |
| | § | **(Jointly Administered)** |
| *Debtor*. | § | |
| | § | |
| **KENNETH REES AND** | § | |
| **THINK FINANCIAL ASSETS, LLC** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 20-03065-hdh** |
| | § | |
| **AXIS INSURANCE COMPANY,** | § | |
| | § | |
| *Defendant.* | § | |

**STIPULATED ORDER PURSUANT TO FEDERAL RULE OF EVIDENCE 502(d)**

Plaintiffs Kenneth Rees ("Rees") and Think Financial Assets, LLC ("Think" and together with Rees, "Plaintiffs") and AXIS Insurance Company ("AXIS," and together with Plaintiffs, the "Parties" and each, a "Party"), through the undersigned counsel, request that the Court enter the following order under Federal Rule of Evidence 502(d) to govern the production of documents or information by the Parties in the above-captioned adversary proceeding (the "AXIS Adversary Proceeding").

WHEREAS the Parties anticipate making productions of documents, including unredacted copies of defense cost invoices, in response to discovery requests and/or making documents available for inspection;

WHEREAS the Parties seek to minimize the costs of pre-production review and/or redaction of documents for privilege and work product;

WHEREAS Federal Rule of Evidence 502(d) provides that a Court can order that disclosure of a document in connection with this litigation does not waive any privilege or protection in this proceeding or any other federal or state proceeding;

WHEREAS Rees and Think will be producing unredacted copies of privileged defense cost invoices subject to the agreement that such production will not constitute a waiver of any privilege or protection in this proceeding or any other federal or state proceeding, and that AXIS will only be allowed to use Rees and Think's defense cost invoices in the defense of this Adversary Proceeding;

IT IS HEREBY ORDERED THAT:

1.      All documents produced by the Parties in this case shall be governed by this order.

2.      Federal Rule of Evidence 502(a)-(b) shall not be the standard for determining

whether or not the production of documents protected from disclosure under the attorney-client privilege, work product protection, and/or any other applicable privilege or immunity constitutes waiver of any such privilege.

3.      The Parties shall have no obligation to take any steps, reasonable or not, to prevent the disclosure of documents protected from disclosure under the attorney-client privilege, work product protection, and/or any other applicable privilege or immunity in advance of the production of those documents.

4.      The Parties agree that, pursuant to Federal Rule of Evidence 502(d), the production of privileged or work-product protected documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client privilege, attorney work-product protection, or other applicable protection in this case or any other federal or state proceeding.  This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

5.      If a Party at any time notifies any other Party that it has produced documents that are protected from disclosure under the attorney-client privilege, work product doctrine, and/or any other applicable privilege or immunity from disclosure, the receiving Party or Parties shall (a) return or destroy all copies of such documents within three (3) business days of receipt of notice from the producing Party; or (b) not use such items for any purpose until further order of the Court, if the receiving Party contests that the documents at issue contain protected information.

6.      The return or destruction of any discovery item shall not in any way preclude the receiving party from moving the Court for a ruling that the document or thing was never

3

privileged.

7.     The provisions of paragraph 4 insofar as they relate to notification by the producing party of an inadvertent production, and the provisions of paragraph 5 in their entirety, shall not apply to any defense cost invoices that Rees and Think produce to AXIS.  However, AXIS is only permitted to use Rees and Think's defense cost invoices in the AXIS Adversary Proceeding.

8.     In the event that the Parties wish to waive the protections of Paragraph 5 with respect to particular documents, they may do so by entering into a written agreement signed by the Parties' respective counsel.  Entry into such an agreement will not constitute a waiver of any other provisions of this order and will not be deemed to constitute a waiver of  the attorney-client privilege, work product doctrine, and/or any other applicable privilege or immunity from disclosure in this litigation or in any other federal or state proceeding.

9.     This order does not eliminate,  limit, or modify the Parties' respective rights under the Stipulated Protective Order entered by this Court on [date].

10.     This order does not obligate any Party to produce any documents that are protected from disclosure under the attorney-client privilege, work product doctrine, and/or any other applicable privilege or immunity from disclosure.


***END OF ORDER***


Dated:  September ___, 2020                    Submitted by:


                                                                    /s/ David R. Taubenfeld

                                                                    David R. Taubenfeld
                                                                    HAYNES AND BOONE, LLP

2323 Victory Avenue, Suite 700
Dallas, Texas 75219
-and-
Tyler C. Gerking, Esq.
Patrick S. Loi, Esq.
FARELLA BRAUN + MARTELL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
COUNSEL FOR THINK FINANCIAL
ASSETS, LLC


Dated:  September ___, 2020                    Submitted by:


                                               /s/ Jeffrey R. Seckel
                                               Jeffrey R. Seckel
                                               J. Mark Chevallier
                                               MCGUIRE CRADDOCK STROTHER PC
                                               500 N. Akard, Suite 2200
                                               Dallas, Texas 75201
                                               -and-
                                               Jeffrey R. Lerman, Esq.
                                               MONTGOMERY, MCCRACKEN WALKER
                                               & RHOADS, LLP
                                               1735 Market Street
                                               Philadelphia, PA 19103
                                               COUNSEL FOR KENNETH REES


Dated:  September ___, 2020                    Submitted by:


                                               /s/ John R. Gerstein
                                               John R. Gerstein (admitted pro hac vice)
                                               CLYDE & CO US LLP
                                               1775 Pennsylvania Avenue, NW, 4th Floor
                                               Washington, DC 2006
                                               Justin S. Levy

CLYDE & CO US LLP
10440 N. Central Expressway, Suite 800
Dallas, Texas 75231
-and-
Vincent P. Slusher
Kristen L. Perry
FAEGRE DRINKER BIDDLE & REATH
LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201
COUNSEL FOR
AXIS INSURANCE COMPANY

# EXHIBIT B

David R. Taubenfeld, Esq.
Texas Bar Number 19679450
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Phone: (214) 651-5531
Fax: (214) 200-0686
david.taubenfeld@haynesboone.co

Tyler C. Gerking, Esq.
Patrick S. Loi, Esq.
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Phone: (415) 954-4400
Fax: (415) 954-4480
tgerking@fbm.com
ploi@fbm.com
OF COUNSEL FOR THINK FINANCIAL ASSETS, LLC

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **THINK FINANCE, LLC** | § | **CASE NO. 17-33964-HDH-11** |
| | § | **(Jointly Administered)** |
| _Debtor._ | § | |
| | § | |
| **KENNETH REES AND** | § | |
| **THINK FINANCIAL ASSETS, LLC** | § | |
| | § | |
| _Plaintiffs,_ | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 20-03065-hdh** |
| | § | |
| **AXIS INSURANCE COMPANY,** | § | |
| | § | |
| _Defendant._ | § | |

**STIPULATED PROTECTIVE ORDER**

Upon the good faith, arms' length negotiations of Plaintiffs Kenneth Rees ("Rees") and

Think Financial Assets, LLC ("Think" and together with Rees, "Plaintiffs") and AXIS Insurance Company ("AXIS," and together with Plaintiffs, the "Parties" and each, a "Party") and upon the agreement of the Parties to the relief set forth herein,

IT IS HEREBY ORDERED THAT:

1. The Parties agree that documents, testimony, and information may be sought, produced, or exhibited by and among the Parties and third parties relating to trade secrets, proprietary systems, confidential commercial information, confidential research and development, or other proprietary information belonging to Think, Rees, AXIS, or third parties.

2. This Order shall govern the use, handling, and disclosure of all documents, testimony or information produced or given by Plaintiffs or third parties to AXIS or by AXIS or third parties to Plaintiffs in connection with the above-captioned adversary proceeding (the "AXIS Adversary Proceeding") which are designated to be subject to this Order.

3. Any documents, testimony or information produced, either voluntarily or pursuant to any subsequent order, which is asserted in good faith by a Party to contain or constitute information protected by Federal Rule of Bankruptcy Procedure 7026(c) or other provision of law asserted by the designating Party, shall be so designated in writing, or orally at a deposition or hearing. Materials so designated shall be clearly marked on their face with the legend: "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEY'S EYES ONLY;" *provided*, *however*, that if such materials are produced by a third party and a Party designates such materials as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEY'S EYES ONLY," then such designating Party may so designate such materials through a written correspondence, including without limitation through an email, to the other Party that identifies the bates label numbers of the materials, or that otherwise identifies the materials, that such Party designates as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEY'S EYES ONLY." Such documents,

1

transcripts, or other materials are referred to herein as "CONFIDENTIAL MATERIAL(S)" and

"CONFIDENTIAL-AEO MATERIAL(S)," respectively. Each Party or third-Party that

designates information or items for protection under this Order must take care to limit any such

designation to specific material that qualifies under the appropriate standards. The designating

Party must designate for protection only those parts of material, documents, items, or oral or

written communications that qualify – so that other portions of the material, documents, items, or

communications for which protection is not warranted are not swept unjustifiably within the

ambit of this Order. Mass, indiscriminate, or routinized designations are prohibited.

4.      AXIS seeks the production of documents, testimony, and information relating to

or produced in the following underlying matters which are referred to herein as the "Underlying

Matters": *Commonwealth of Pennsylvania v. Think Finance, Inc.*, Case No. 2:14-cv-07139-JCJ

in the Eastern District of Pennsylvania; *Gingras v. Rosette*, Case No. 1:15-cv-101 in the District

of Vermont; *Gibbs v. Rees*, Case No. 3:17-cv-386 in the Eastern District of Virginia; *Banks v.*

*Rees,* Case No. 8:17-cv-002201-AAS in the Middle District of Florida; *Brice v. Rees*, Case No. 3

:18-cv-01200 in the Northern District of California; *Granger v. Great Plains Lending, LLC*, Case

No. 1:18-cv-00112 in the Middle District of North Carolina; *CFPB v. Think Finance, LLC f/k/a*

*Think Finance, Inc.*, Case No. 4:17-cv-00127 in the District of Montana; *Gibbs et al., Adversary*

*Proceeding* No. 3:2017-bk-33964, Adversary Case No. 3:17-03117 in the Bankruptcy Court for

the Northern District of Texas; *Banks et al.*, *Adversary Proceeding* No. 3:2017-bk-33964,

Adversary Case No. 3:17-03121 in the Bankruptcy Court for the Northern District of Texas;

*Browne, Adversary Proceeding* No. 3:2017-bk-33964, Adversary Case No. 3:17-03120 in the

Bankruptcy Court for the Northern District of Texas; *In re Think Finance*, Case No. 17-33964

(HDH) (Bankr. N.D. Tex.). Any documents, testimony, or information that were designated

"CONFIDENTIAL" or an equivalent designation at any time under a protective order entered in or applicable to any of the Underlying Matters or any related action, and were not de-designated or successfully challenged, shall be deemed designated as "CONFIDENTIAL" for the purposes of this Order.  Any documents, testimony, or information that were designated "CONFIDENTIAL—ATTORNEY'S EYES ONLY," "Confidential – Professionals Eyes Only," or "Committee Professionals Only Information" or an equivalent designation at any time under a protective order entered in or applicable to any of the Underlying Matters or any related action, and were not de-designated or successfully challenged, shall be deemed designated as "CONFIDENTIAL- ATTORNEY'S EYES ONLY" for the purposes of this Order.

4.       A Party wishing to designate portions of a deposition transcript CONFIDENTIAL pursuant to this Order must, within two (2) business days from the conclusion of the deposition, order the original or a copy of the transcript of the deposition from the court reporter for regular turnaround.  The designating Party may designate those portions of the transcript CONFIDENTIAL or CONFIDENTIAL-ATTORNEY'S EYES ONLY, in accordance with paragraph 3 of this Order. The designating Party shall designate such CONFIDENTIAL MATERIAL or CONFIDENTIAL-AEO MATERIAL either on the record or by serving upon all counsel of record via facsimile or other electronic transmission a notice setting forth the page, line numbers and designation. The designating Party must serve such notice within ten (10) calendar days after its counsel receives a copy of the deposition transcript. All transcripts ordered within two (2) business days from the conclusion of the deposition will be treated as CONFIDENTIAL MATERIAL until the expiration of the ten (10) day period described in this paragraph. Any portions of a transcript designated as CONFIDENTIAL or CONFIDENTIAL-ATTORNEY'S EYES ONLY shall thereafter be treated as CONFIDENTIAL MATERIAL or

CONFIDENTIAL-AEO MATERIAL, respectively, in accordance with this Order. Notwithstanding any other provision of this Order, all transcripts of depositions shall be deemed designated as CONFIDENTIAL under this Order for a period of 30 days following transcription. The Parties shall negotiate in good faith to alter the time frames set forth in this paragraph in situations where a more expedited filing of a designated portion of the deposition transcript is required.

5.     If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the designating Party's right to secure protection under this Order for such material.  Upon timely correction of a designation, the receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.     All CONFIDENTIAL MATERIALS and CONFIDENTIAL-AEO MATERIALS, and all information derived therefrom (including but not limited to all testimony, deposition or otherwise, that refers, reflects or otherwise discusses any such materials), shall not be used, directly or indirectly, by any person for any business, commercial or competitive purposes or for any purpose whatsoever other than solely for prosecuting, defending, or attempting to settle the AXIS Adversary Proceeding in accordance with this Order.

7.     In the absence of prior written permission from the designating Party or an order by the Court, CONFIDENTIAL MATERIALS shall not be disclosed to any person other than: (i) the Parties and their attorneys of record, and those attorneys' support staff employees who perform work tasks related to the AXIS Adversary Proceeding; (ii) qualified persons taking testimony involving such material and necessary stenographic and clerical personnel; (iii) disclosed experts or consulting experts and their staff employed in connection with the AXIS

4

Adversary Proceeding; (iv) present or former employees of the producing Party in connection

with their testimony in the AXIS Adversary Proceeding (provided that no former employees

shall be shown documents prepared after the date of his or her departure); (v) any individual

designated as the corporate representative of the producing Party or if its assignee; (vi) the author

or recipient of a document containing the information or a custodian or other person who

otherwise possessed or knew the information; (vi) outside photocopying and electronic discovery

vendors; (vii) the Court and Court personnel; and (viii) any reinsurer, accountant, actuary,

auditor, or regulator to whom the receiving Party (or its outside counsel of record) has an

obligation to report and/or to provide access to its files.

8.     CONFIDENTIAL MATERIALS and CONFIDENTIAL-AEO MATERIALS

shall not be disclosed to any person designated in paragraph 7(iii) unless he or she has executed a

written, dated declaration in the form attached as Exhibit A, acknowledging that he or she has

first read this Order, agreed to be bound by the terms thereof, agreed not to reveal such

CONFIDENTIAL MATERIALS or CONFIDENTIAL-AEO MATERIALS to anyone, and

agreed to utilize such CONFIDENTIAL MATERIALS or CONFIDENTIAL-AEO

MATERIALS solely for the purposes of the AXIS Adversary Proceeding. All persons to whom

CONFIDENTIAL MATERIALS or CONFIDENTIAL-AEO MATERIALS are disclosed are

hereby enjoined from disclosing same to any other person except as provided in this Order, and

are also enjoined from using same except for prosecuting, defending, or attempting to settle the

AXIS Adversary Proceeding in accordance with this Order.. No person receiving or reviewing

CONFIDENTIAL MATERIALS or CONFIDENTIAL-AEO MATERIALS shall disseminate or

disclose them to any person other than those described above in Paragraph 7 and for the purposes

specified, and in no event shall such person make any other use of such CONFIDENTIAL

MATERIALS or CONFIDENTIAL-AEO MATERIALS.

9.      In the absence of prior written permission from the designating Party or an order by the Court, CONFIDENTIAL-AEO MATERIALS shall not be disclosed to any person other than counsel of record in the AXIS Adversary Proceeding and the in-house counsel of a Party or as described in paragraph 8.

10.     In the event that any Party disagrees with any designation made under this Order, the Parties shall first try in good faith to resolve the disagreement informally. If the dispute cannot be resolved and the receiving Party concludes in good faith that the materials have been improperly classified, the receiving Party shall notify the designating Party in writing by facsimile or by electronic transmission of its objection, but shall continue to maintain the documents or other information as CONFIDENTIAL MATERIALS or CONFIDENTIAL-AEO MATERIALS, consistent with the designating Party's designation, for fifteen (15) days after such notice. The designating Party shall have the right to move the Court to retain the designated status of such materials. If the designating Party files such a motion within the fifteen (15) day period, the receiving Party shall continue to retain the materials as CONFIDENTIAL MATERIALS or CONFIDENTIAL-AEO MATERIALS, consistent with the designating Party's designation, until the Court has ruled on the designating Party's motion.

11.     Any Party seeking to file CONFIDENTIAL MATERIALS or CONFIDENTIAL-AEO MATERIALS with the Court shall request leave to file such material under seal. Where possible, however, only those portions of the filings with Court that disclose "CONFIDENTIAL MATERIALS" or "CONFIDENTIAL-AEO MATERIALS" shall be filed under seal. Parties filing documents under seal shall also file redacted documents simultaneously. This paragraph is without prejudice to the right of any Party to move upon notice to the applicable Party to unseal

35669\13554024.2

any papers filed under seal. The parties shall work together in good faith to coordinate the filing

of all motions and material covered by this paragraph to permit compliance with the Local Rules.

12.     Any Party that files any discovery materials with the Court shall redact any

personally identifying information that may be contained therein.

13.     Subject to paragraph 10, within sixty (60) days after the conclusion of the AXIS

Adversary Proceeding, upon written request, the Parties shall destroy,return to the designating

Party, or continue to retain pursuant to the terms of this Order all materials containing

information designated in accordance with paragraph 3 above. Notwithstanding this provision,

counsel for each Party are entitled to retain an archival copy of all pleadings, written discovery

(e.g., interrogatory answers), motion papers, trial, deposition, and hearing transcripts, legal

memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product,

and consultant and expert work product, even if such materials contain "CONFIDENTIAL

MATERIALS" or "CONFIDENTIAL-AEO MATERIALS". Any such archival copies that

contain or constitute "CONFIDENTIAL MATERIALS" or "CONFIDENTIAL-AEO

MATERIALS" remain subject to this Order In the event that the receiving Party elects to destroy

or retain, rather than return, "CONFIDENTIAL MATERIALS" or "CONFIDENTIAL-AEO

MATERIALS",  the receiving Party shall provide written verification to the designating Party.

14.     This Order shall remain binding after the final disposition of the AXIS Adversary

Proceeding unless otherwise ordered by the Court, and the Court shall retain jurisdiction over all

Parties and third parties bound hereby for the purposes of enforcing this Order. Each individual

signing the acknowledgment attached as Exhibit A agrees to be subject to the jurisdiction of this

Court for purposes of this Order.  Final disposition shall be deemed to be the later of (1)

dismissal of all claims and defenses in this action, with or without prejudice; and (2) final

7

judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

15.     This Order does not prevent any Party from seeking to seal hearing transcripts and/or hearing exhibits, including documents previously filed under seal, or from seeking any other similar relief upon an appropriate showing.

16.     Neither the entry of this Order, nor the designation of any material as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEY'S EYES ONLY," nor the failure to make such designation, shall constitute evidence on any issue in the AXIS Adversary Proceeding. The designation of any materials as "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEY'S EYES ONLY" does not waive that Party's objection to any discovery on the ground that it seeks information protected by Federal Rule of Bankruptcy Procedure 7026(c) or other provision of law. Nothing herein shall affect or restrict the rights of any Party with respect to its own documents or to the information obtained or developed independently of materials afforded confidential treatment pursuant to this Order.

17.     Third parties who are the subject of discovery requests, subpoenas, or depositions in the AXIS Adversary Proceeding may take advantage of the provisions of this Order by providing Plaintiffs and AXIS with written notice that they intend to comply with and be bound by the terms of this Order.  For the avoidance of doubt, nothing in this Order shall be interpreted to grant any third parties rights to receive the CONFIDENTIAL MATERIALS or CONFIDENTIAL-AEO MATERIALS of a Party.

***END OF ORDER***

Dated:  October 7, 2020                          Submitted by:

8

/s/ David R. Taubenfeld

David R. Taubenfeld
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
-and-
Tyler C. Gerking, Esq.
Patrick S. Loi, Esq.
FARELLA BRAUN + MARTELL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
COUNSEL FOR THINK FINANCIAL
ASSETS, LLC

Dated:  October 7, 2020                Submitted by:

/s/ Jeffrey R. Seckel

Jeffrey R. Seckel
J. Mark Chevallier
MCGUIRE CRADDOCK STROTHER PC
500 N. Akard, Suite 2200
Dallas, Texas 75201
-and-
Jeffrey R. Lerman, Esq.
MONTGOMERY, MCCRACKEN WALKER
& RHOADS, LLP
1735 Market Street
Philadelphia, PA 19103
COUNSEL FOR KENNETH REES

Dated:  October 7, 2020                Submitted by:

/s/ John R. Gerstein

John R. Gerstein (admitted pro hac vice)
CLYDE & CO US LLP
1775 Pennsylvania Avenue, NW, 4th Floor
Washington, DC 2006

9

Justin S. Levy
CLYDE & CO US LLP
10440 N. Central Expressway, Suite 800
Dallas, Texas 75231
-and-
Vincent P. Slusher
Kristen L. Perry
FAEGRE DRINKER BIDDLE & REATH
LLP
1717 Main Street, Suite 5400
Dallas, Texas 75201
COUNSEL FOR
AXIS INSURANCE COMPANY

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **THINK FINANCE, LLC** | § | **CASE NO. 17-33964-HDH-11** |
| | § | **(Jointly Administered)** |
| *Debtor.* | § | |
| | § | |
| **KENNETH REES AND** | § | |
| **THINK FINANCIAL ASSETS, LLC** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 20-03065-hdh** |
| | § | |
| **AXIS INSURANCE COMPANY,** | § | |
| | § | |
| *Defendant.* | § | |

**DECLARATION OF** _____
**UNDER STIPULATED PROTECTIVE ORDER**

I, _____ being duly sworn, declare as follows:

1.  My address is _____.

2.  My present employer is _____.

3.  My present occupation or job description is _____

_____.

4.  I hereby acknowledge that: (i) I have been given a copy of the Stipulated

Protective Order ("Protective Order") stipulated to by the Parties in the above-referenced

bankruptcy adversary proceeding; (ii) I carefully read the Protective Order; and (iii) I understand

and am familiar with the terms of the Protective Order.

5.  I will comply with all of the provisions of the Protective Order. I will hold all

1

CONFIDENTIAL MATERIALS or CONFIDENTIAL-AEO MATERIALS disclosed to me, including the substance and any copy, summary abstract, excerpt, index or description, in confidence, and will not disclose such material to anyone not qualified under the Protective Order. I will not use any CONFIDENTIAL MATERIALS or CONFIDENTIAL-AEO MATERIALS disclosed to me for any purposes other than the AXIS Adversary Proceeding.

6.      I will return all CONFIDENTIAL MATERIALS or CONFIDENTIAL-AEO MATERIALS that comes into my possession and all documents and things that I have prepared relating thereto, to counsel for the Party by who I am retained or employed, or from whom I received such material.

7.      I hereby submit to the jurisdiction of the United States Bankruptcy Court for the Northern District of Texas for the purpose of enforcement of the Protective Order.

I declare under the penalty of perjury that the foregoing is true and correct.

_____

2

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JESSICA GINGRAS and<br>ANGELA C. GIVEN, on behalf of<br>themselves and all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>JOEL ROSETTE, TED WHITFORD,<br>TIM MCINVERNEY, THINK FINANCE,<br>INC., TC LOAN SERVICE, LLC,<br>KENNETH E. REES, TC DECISION<br>SCIENCES, LLC, TAIL WIND<br>MARKETING, LLC, SEQUOIA CAPITAL<br>OPERATIONS, LLC and TECHNOLOGY<br>CROSSOVER VENTURES,<br>Defendants. | CASE NO.: 5:15-cv-101 |

## DEFENDANT KENNETH REES' NARRATIVE
## STATEMENT OF POSITION

Defendant Kenneth E. Rees, by and through his undersigned counsel, hereby submits this

statement of position in response to the Court's August 20, 2019 Order (ECF No. 190) requesting a

short narrative on remaining discovery, anticipated dispositive motion practice, and a proposed

schedule.

## I.    PROPOSED SCHEDULE

Defendant Rees joins with the other defendants in proposing the following schedule on

which this case should proceed:

Deadline to file answer or otherwise respond: 9/25

Initial Disclosures:  10/9/19

Amendment of pleadings:  10/30/19

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
P.O. BOX 1307
BURLINGTON, VERMONT 05401

PLAINTIFFS_022387

Case 20-03065-hdh Doc 35 Filed 10/07/20 Entered 10/07/20 15:39:19 Page 2 of 4

<u>Close of Discovery on Jurisdictional/Preliminary Issues:</u>  11/17/19

<u>Deadline for Motions on Jurisdictional/Preliminary Issues</u>: 12/21/20

<u>Deadline for fact and expert discovery relating to class certification</u>:  4/20/20

<u>Deadline for class certification motion</u>:  5/20/20

<u>Deadline for opposition to class certification motion</u>:  7/5/20

<u>Deadline for reply</u>:  7/20/20

<u>Hearing on class certification motion</u>:  8/15/20

<u>Close of Fact Discovery on Merits</u>: 1/19/21

<u>Plaintiff's Expert reports</u>:  2/14/21

<u>Defendant Expert reports</u>:  4/1/21

<u>Depositions of experts</u>: 6/1/21

<u>Motions, including summary judgment</u>:  7/1/21

<u>Trial ready date</u>: 11/17/2021

## II.    **ANTICIPATED DISPOSITIVE MOTIONS**

While not a dispositive motion, Rees anticipates filing and/or joining a motion pursuant to 28 U.S.C. § 1412 seeking transfer of the claims pending against Rees to the United States District Court for the Northern District of Texas for referral to the Northern District of Texas Bankruptcy Court in which the Think Finance Bankruptcy is pending.  Similar claims that had been pending in other district courts have already been transferred to the Northern District of Texas for referral to the bankruptcy court. *See Gibbs v. Rees*, No. 3:18-cv-00386, 2018 WL 1460705 (E.D. Va. Mar. 23, 2018).  Based upon the ruling in the *Gibbs* case, other similar litigation against Rees in Florida and California has been voluntarily transferred to the Bankruptcy Court.  Plaintiffs here, however, have thus far declined to voluntarily transfer their claims against Rees to the Bankruptcy Court following

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
P.O. BOX 1307
BURLINGTON, VERMONT 05401

PLAINTIFFS_022388

the ruling in *Gibbs*. Additionally, at the appropriate time, Rees also anticipates filing a motion seeking summary judgment of the claims against him.

## III.  **DISCOVERY**

Rees expects that discovery in this action can be streamlined in certain respects, and will be protracted in other respects. In other related litigation, Rees has relied upon Think Finance to search and produce relevant documents (particularly e-mails) from the time during which Rees was employed by Think Finance. Rees, however, is no longer employed by Think Finance, nor does he have access to relevant documents maintained by either Think Finance or from Rees's other former employer, Elevate Credit, Inc. Given this, Rees has very few, if any, documents in his custody, possession, or control that are relevant to this case.

On the other hand, Rees will require significant discovery from multiple parties in order to oppose class certification and to prepare his defense. Chief among Rees's discovery requests will be extensive requests to Plaintiffs, who by virtue of their participation in the Think Finance bankruptcy, have received hundreds of thousands of documents. Rees will also seek discovery from Plaintiffs to understand the evidentiary basis of the allegations made against him, as well as the adequacy of Plaintiffs' pre-filing investigation. Rees anticipates that he will require significant discovery from other defendants, as well numerous third-party subpoenas, including to Think Finance. These discovery requests may result in significant discovery disputes.

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
P.O. BOX 1307
BURLINGTON, VERMONT 05401

PLAINTIFFS_022389

In all, Rees anticipates engaging in significant discovery on both class and merits issues.

This will require extensive document discovery from other parties, as well as numerous depositions.

KENNETH REES

Dated: August 30, 2019          By: _____ */s/ Richard L. Scheff* _____
                                     Richard Scheff, Esq. (*admitted pro hac vice*)
                                     Jonathan Boughrum, Esq. (*admitted pro hac vice*)
                                     David Herman, Esq. (*admitted pro hac vice*)
                                     Armstrong Teasdale LLP
                                     1500 Market Street
                                     12th Floor, East Tower
                                     Philadelphia, PA 19102
                                     (215) 246-3478
                                     rlscheff@armstrongteasdale.com
                                     jboughrum@armstrongteasdale.com
                                     dherman@armstrongteasdale.com


                                By: _____ */s/ Stephen D. Ellis* _____
                                     Stephen D. Ellis
                                     Paul Frank + Collins P.C.
                                     One Church Street
                                     Burlington, VT 05402-1307
                                     (802) 658-2311
                                     sellis@pfclaw.com

7686582_1:13517-00001

PAUL FRANK + COLLINS P.C.
ATTORNEYS AT LAW
P.O. BOX 1307
BURLINGTON, VERMONT 05401

PLAINTIFFS_022390